Blaine E. Cartlidge, Esq
NV Bar Number 3379
CARTLIDGE LAW OFFICE
5865 Tyrone Rd, Suite 101
Reno, NV 89502
775-843-3196
cartlidgelawoffice@icloud.com

John White, Esq.
NV Bar Number 1741
WHITE LAW CHARTERED
335 West First St.
Reno, NV, 89503
775-322-8000
775-322-1228 (Fax)
john@whitelawchartered.com

Attorneys for Plaintiffs

E-filed February 16, 2021

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

IN RE:

MARGARET LESLIE CANTLON, aka Cindy Cantlon, Mrs. William McKean Cantlon

Debtor in Possession

---

MARGARET LESLIE CANTLON, aka Cindy Cantlon, Mrs. William McKean Cantlon and MARGARET LESLIE CANTLON, Trustee of the WILLIAM and MARGARET CANTLON FAMILY TRUST dated March 7, 2000,

Plaintiffs,

vs

WELLS FARGO & COMPANY, WELLS FARGO BANK N.A. and WELLS FARGO ADVISORS, LLC

Defendants.

Case No: BK-15-50292-btb
Chapter 11

Adv. No. 18-05006-GWZ

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

HEARING DATE:
Hearing Time:
Est. Time: __ Minutes

Plaintiffs, Margaret Leslie Cantlon, Debtor in Possession, and Margaret Leslie Cantlon, trustee of the William and Margaret Cantlon Family Trust dated March 7, 2000 ("Margaret"), by counsel, submit their Supplemental Brief ("Brief"), as ordered by the Court, in opposition to the second Motion To Dismiss ("Motion") filed by Defendants, WELLS FARGO & COMPANY, WELLS FARGO BANK N.A., and WELLS FARGO ADVISORS, LLC. (collectively "Wells Fargo"), and submit the following Points and Authorities.

## POINTS AND AUTHORITIES

**CURRENT STATUS**

The Nevada Supreme Court issued its advisory opinion on November 20, 2020, declaring that NRS 11.290, a Nevada statute of limitation specific to recovery of bank deposits, is not as specific as the various general limitations at NRS 11.190. That opinion in effect nullifies NRS 11.290. Should the Court accept the advisory opinion and rule that NRS 11.290 does not apply to Margaret's claims for relief, then the Court should address Margaret's arguments about application of the discovery rule, equitable estoppel, and turnover.

This action began on March 7, 2018. On October 29, 2018, Margaret filed her Amended Complaint pursuant to the Court's grant of leave to amend. On February 21, 2019, the Court conducted an additional hearing this time on Wells Fargo's second motion to dismiss ("Motion"). The result of that hearing was a certification order to the Nevada Supreme Court on March 27, 2019 requesting an advisory opinion concerning NRS 11.290.

Subsequent to the Nevada Supreme Court opinion, the Bankruptcy Court held a status conference telephone hearing on January 26, 2021. Supplemental briefing on the outstanding Motion was scheduled. A general principle of law applies to consideration of the Motion, which is that:

> Dismissal on statute of limitations grounds is only appropriate 'when

uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered' the facts giving rise to the cause of action. *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir. 1992).

*Baroi v. Platinum Condo. Dev., LLC*, 914 F. Supp. 2d 1179, 1199 (D. Nev. 2012).

**THE AMENDED COMPLAINT AND SECOND MOTION TO DISMISS**

Margaret's Amended Complaint seeks to recover investment and customer deposits taken by Wells Fargo/Wachovia bank and investment advisory employees, who were incited by discredited and double-dealing profit motives, and equipped with corrupted internal systems. The Amended Complaint contains ten claims for relief, including three federal statute claims. Number seven is the federal Electronic Funds Transfers Act, which has a one-year statute of limitations applied. Numbers five and six (negligent hiring and violation of privacy) have two-year statutes of limitations. All other claims for relief have statutes of limitations of three years or more.

The Amended Complaint lays out specific facts and vivid details about the abuse and conversion committed against Margaret, and for purposes of this motion, they are taken as true. Also, for purposes of this Motion, Wells Fargo was duty bound to discover and disclose to Margaret the many red flags of very improper investment and banking activities occurring over the years. Id. Margaret detrimentally relied upon Wells Fargo's special institutional and expert position.

Wells Fargo argues that the various statutes of limitations have all expired because Margaret took back control of her finances in late 2012. Wells Fargo fails to explain how an elderly widow suddenly becomes an astute analyst of not only her current finances but the prior six years worth, with scant records in disarray and Wells Fargo suppressing facts about its schemes.

The Motion hinges, however, on Margaret's May 29, 2015 disclosure statements filed in her bankruptcy case, in which she speaks about Wells Fargo. While making much ado about Margaret controlling her finances, the Motion's reliance on the May 2015 disclosure statements reveals the fact that <u>no evidence</u> exists to date, par-

ticularly within the four corners of the Amended Complaint, that Margaret had any pre-2015 specific knowledge of Wells Fargo's role and machinations in the loss of her deposits. Perhaps the reason why is because evidence was suppressed. Wells Fargo's deflection onto Margaret's son as the key player in her losses conveniently omits the role of other bank agents, and suppresses the central truth about perverted profit motives and systems developed and enforced by Wells Fargo that enabled advisory employees and bank managers like Margaret's son.

Nevertheless, the applicable statutes of limitations are all subject to the discovery rule and, under Margaret's circumstances, they are tolled. Assuming arguendo, that her May 2015 disclosure statements constitute evidence of adequate knowledge of the facts and specific causes of Margaret's losses to trigger any limitations, then mathematically the only limitations to have expired prior to the filing of the Complaint on March 7, 2018, is the two-year statute of limitations.

Wells Fargo's application of the bankruptcy two-year statute of limitation at 11 U.S.C. §108(a) actually favors Margaret because unexpired Nevada statutes of limitations exist. The three-year and four-year statutes were not triggered prior to May 2015 at the earliest.

Wells Fargo also attacks Margaret's seventh claim for relief, the federal Electronic Funds Transfers Act, and her turnover claim and her equitable estoppel argument. Those are discussed later below, but it is indisputable under the law that a converter [thief] never acquires title and thus cannot validly transfer. Wells Fargo enabled; it stole.[1]

### LAW: LIMITATIONS ARE TOLLED.

Margaret must not ". . . be foreclosed from judicial remedies before they know that they have been injured and can <u>discover the cause</u> of their injuries." *Bemis v. Estate*

---

[1] "Did Wells Fargo employees steal from a million to two million of their customers? Yes or no?" Wells Fargo CEO John Stumpf replied: "In some cases they did." See Representative Sean Duffy's exchange with Mr. Stumpf on September 29, 2016, at https://www.c-span.org/video/?415981-1/ceo-john-stumpf-testifies-unauthorized-wells-fargo-accounts, from 1:14: 44-1-1:20:17. Margaret was one of those customers.

3

*of Bemis*, 114 Nev. 1021, 967 P.2d 437, 440 (Nev. 1998) [emphasis added] (beneficiary action against estate to recover trust asset lost in the deceased's old divorce). A statute of limitation could not have commenced prior to Margaret acquiring adequate knowledge of more than just a hope and prayer of some fraudulent action against her son and Wells Fargo. And, her diligence is a question of fact. *Baroi v. Platinum Condo. Dev., LLC*, 914 F. Supp. 2d 1179, 1199 (D. Nev. 2012).

Moreover, "[w]e have held that when a party who is relied upon in a fiduciary capacity [e.g., Margaret's investment advisors] fails to fulfill his obligations thereunder, and does not tell the other party of his failure, his omission constitutes constructive fraud, tolling the statute of limitations <u>until the facts constituting the fraud are discovered</u>, or should have been discovered, by the injured party. *Allen v. Webb*, 87 Nev. 261, 485 P.2d 677 (1971)." *Golden Nugget, Inc. v. Ham*, 95 Nev. 45, 48, 589 P.2d 173 (1973) (emphasis added) (corporate director who also served as corporate attorney failed to disclose personal real estate deal).

The little evidence surrounding Margaret's discovery and its meaning at this stage is in dispute and should not be considered irrefutable demonstration of her adequate knowledge of facts in support of the elements of appropriate claims for relief. There is no clarity about, but rather deep issues of fact concerning when Margaret knew or should have known that a giant bank's systems and management could allow and incite internal serial invasions and violations of personal identity and of accounts in both the investment brokerage side and in the consumer banking side over prolonged time without noticing all of the red flags and speaking directly with the customer.

Wells Fargo concedes that Margaret's claims for relief numbers 2, 3, 4, and 9 have statutes of limitations that are subject to the discovery rule. Motion 10:3-4 and its Exhibit 1. Those concern fiduciary duty, Nevada's Deceptive Trade Practices Act, confidential relationship, and conversion. Margaret submits that her first claim for relief for elder exploitation, her fifth claim for relief for negligent hiring, retention and supervision of certain employees, her sixth claim for relief for violations of expectation of

privacy, and her seventh claim for relief for violations of the federal "Electronic Funds Transfer Act," all have a reasonable, ethical basis in law for the proper extension of their applicable statutes of limitation under the discovery rule.

The elder exploitation statute at NRS 11.190(3)(a), and the limitations statute concerning negligence actions at NRS 11.190(4)(e), do not define when a cause of action accrues. "In dealing with statutes that do not specify when a cause of action accrues, we have held that the discovery rule would apply." See, *Oak Grove Inv. v. Bell & Gossett Co.*, 99 Nev. 616, 622-23, 668 P.2d 1075, 1079 (1983) (holding that where the 'catch all' statute of limitations, NRS 11.220, was silent as to time of accrual, the discovery rule would apply). Likewise, an extension under the discovery rule of the one year statute of limitation in the federal Electronic Funds Transfer Act is appropriate. The federal courts that have attempted to address a discovery rule application to this one-year limitation defer to the ruling in a Sixth Circuit appellate decision:

> Must a consumer know that a noncompliant transfer has occurred before the limitations clock starts? Although EFTA's other provisions reduce the risk that a consumer will remain ignorant of such transfers, see, e.g., id. §1693d(c)(1), 1693f(f)(3), it does not say whether a consumer who receives delayed notice of a noncompliant transfer can sue once the one-year window has closed. Whether EFTA incorporates a discovery rule or permits equitable tolling are matters for another day.

*Wike v. Vertrue*, 566 F.3d 590, 596 (6th Cir. 2009) (emphasis added). "Another day" is at hand. A consumer like Margaret should receive disclosure of a noncompliant transfer before the limitations clock starts. Otherwise, untimely disclosure or nondisclosure can force a limitation into an abolition. And no evidence exists that Margaret possessed adequate knowledge of illegal electronic transfers prior to March 7, 2017.

**LAW: EQUITABLE ESTOPPEL PREVENTS**

Margaret submits that Wells Fargo's conduct and special position in relationship to her requires that it be estopped from asserting the defense of the statute limitations. "An estoppel to set up the defense of the statute of limitations arises as a result of some conduct by the defendant, relied upon by the plaintiff, that induces the belated

filing of the action." 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 762, p. 993. "Equitable estoppel operates to prevent a party from asserting legal rights that, in equity and good conscience, they should not be allowed to assert because of their conduct. *United Brotherhood v. Dahnke*, 102 Nev. 20, 22, 714 P.2d 177, 178-179 (1986)." *Nevada State Bank v. Jamison Family Partnership*, 801 P.2d 1377, 1382, 106 Nev. 792, 800 (Nev.1990) (statute of limitations against the bank was not estopped). Silence can raise estoppel. *NGA No. 2 Ltd. Liability Co. v. Rains*, 113 Nev. 1151, 946 P.2d 163 (1997); *Vancheri v. GNLV. Corp.*,105 Nev. 417, 421, 777 P.2d 366, 369 (1989).

Wells Fargo and Wachovia cultivated and enjoyed a very special fiduciary and investment advisory and banking relationship with Margaret for more than 50 years, and particularly so after Margaret was widowed. Indeed, Wells Fargo was the one in best position to discover and disclose problems. Cf., *McIntosh v. Jack Matthews and Company*, 109 Nev. 628, 632-36, 855 P.2d 549, 551-54 (1993). When a fiduciary fails to disclose his misconduct, "his omission constitutes constructive fraud, tolling the statute of limitations until the facts constituting the fraud are discovered, or should have been discovered, by the injured party. [Emphasis added] *Allen v. Webb*, 87 Nev. 261, 485 P.2d 677 (1971)." *Golden Nugget, Inc. v. Ham*, 95 Nev. 45, 48, 589 P.2d 173 (1973) (corporate director who also served as corporate attorney failed to disclose personal real estate deal).

So, taking Margaret's allegations in the Amended Complaint as true for purposes of this Motion, it is true that Wells Fargo and its employees abused Margaret and that she detrimentally relied upon Wells Fargo's special institutional and expert position. And, for purposes of this Motion, Wells Fargo was duty bound to discover and disclose to Margaret the many red flags of very improper investment and banking activities occurring over the years. Id. Margaret submits that but for Wells Fargo's machinations and internal domination of records and information, she could have reacted sooner rather than so late. Margaret requests that Wells Fargo be estopped from asserting the defense of the statute limitations.

**LAW: TURNOVER**

The bank admits in its discussion of turnover in its Motion to Dismiss Amended Complaint (page 19) that there is no statute of limitation for turnover actions. But Wells Fargo alleges that laches could apply. (see footnote 14 on the same page).

> Generally, when an action is not subject to a statute of limitations, the equitable doctrine of laches may alternatively limit the time within which the action must be brought.
> . . .
> To succeed on its affirmative defense of laches, CBIC was required to present evidence of an inexcusable delay in the exercise of a known right, and that it was thereby prejudiced.

*Shook v. CBIC (In re Shook)*, 278 B.R. 815, 829 (B.A.P. 9th Cir. 2002). In other words, more than mere lapse of time is necessary to show laches. *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956, 968 (N.D. Cal. 1977).

Margaret's delay, if any, is excusable in a court of equity because of Wells Fargo's suppresion of evidence and Margaret's inability to obtain counsel.

**Property of the estate issues §542(a)**

> . . . §542(a) works within the bankruptcy process to draw far-flung estate property back into the hands of the debtor or trustee. . ..

*City of Chi. v. Fulton*, 141 S. Ct. 585, 208 L. Ed. 2d 384, 390 (2021)

Margaret asserts that Wells Fargo owes her substantial monies. Wells Fargo asserts that Turnover of those monies will not lie because the complaint alleges that the property had been allegedly dissipated by Wells Fargo's employees long before the Petition date (March 5, 2015). See Amended Complaint, beginning at paragraph 25. Wells Fargo does not dwell on the fact that one of these bank employees was Margaret's son. See Second Amended Disclosure Statement, page 4, line 20 (filed in the main case on January 31, 2018).

Wells Fargo cites to *In re Bruner*, 561 B.R. 397 and *In re Teligent, Inc.*, 325 B.R. 134 (Motion to Dismiss Amended Complaint, p. 17) to the effect that Margaret must first

recover the assets before seeking turnover, but that begs the question. Wells Fargo may have lost its assets, but not Margaret's, as the bank remains an obligor to her. An embezzling bank employee, however successful, does not deplete the depositor's funds.

Wells Fargo, however indirectly, essentially adopts Judge Markel's conclusion that funds on deposit belong to Wells Fargo, with Margaret only possessing an account receivable. *In re Nat'l Audit Def. Network*, 332 B.R. 896, 909. See also *Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (J Scalia). However this may be at Federal law, it elevates form over substance, when applied to 542(a) or to Nevada law, which informally at least recognizes the common understanding that bank deposits are property of the customer. See e.g. NRS 11.290 (". . . actions brought to recover money or other property deposited with any bank . . ."; *Grimes v. Grimes*, 52 F.2d 171, 178 (D. Nev. 1931) ". . . deposit in its savings account in the name of the clerk of this court all money derived from such sale. . ."; *Edmonds v. Perry*, 62 Nev. 41, 46, 140 P.2d 566, 569 (1943) "Generally, the law presumes that a bank deposit belongs to person in whose name it is entered, . . .".

> To allow Debtor to gain refuge behind Rule 4003(b) when he amended his financial statement in response to Trustee's objections would be to elevate form over substance. We cannot countenance such a wooden application of the Bankruptcy Rules.

*Wharton v. Schwartzer (In re Wharton)*, 563 B.R. 289, 296 (B.A.P. 9th Cir. 2017).

> We agree with the bankruptcy court. SMDI's counsel acknowledged at oral argument that it would have been "entirely appropriate" if the Trustee had litigated the Adversary Proceeding to completion, obtained the Domain Name, and then auctioned it off to the highest bidder and distributed the proceeds to unsecured creditors. Adv. App., Oral Argument at 8:27-8:51. The Trustee's ability to do so, however, was jeopardized by the costliness and complexity of the litigation and the estate's lack of resources. Early on, the Trustee recognized that he could best serve the estate's creditors by selling the estate's interests in the Domain Name; he then did so with the bankruptcy court's approval. The prospect of a successful recovery on the estate's § 542(a) claim thus translated into a direct and immediate benefit for the unsecured creditors. To ignore this benefit would be to elevate form over substance. We do not think Congress intended to punish a party in

ConsumerInfo's position with a forfeiture for having provided consideration in a manner that made it more likely that "the plan w[ould] achieve its intended results which are consistent with the purposes of the Bankruptcy Code."

*In re Paige*, 685 F.3d 1160, 1193 (10th Cir. 2012) (a 542(a) case).

**Disputed amount issues §542(b)**

Article VII of her confirmed Plan authorizes Margaret to liquidate the estate's claim against Wells Fargo, as required by § 1123(b)(3)(A)-(B). Margaret refers the Court to the discussion of this matter at pages 24, line 20 through page 25, line 24 of her Opposition to Dismiss Amended Complaint, filed herein on February 7, 2019 and urges the Court to adopt Judge Tighe's reasoning in *Cynergy Holdings*, 588 B.R. 82, 98 (Bankr. C.D. Cal. 2018).

**IN THE ALTERNATIVE, MARGARET REQUESTS LEAVE TO AMEND**

Alternatively, Margaret respectfully requests leave of Court to again amend her Complaint to add a cause of action for breach of contract, which has a six year statute of limitation. The written contracts at issue would include the common bank account signature cards and policies for bank accounts, a couple of which date back to the 1970s, as well as the investment advisory services and account contracts applicable to Margaret's one real investment account at Wachovia/Wells Fargo. Margaret would allege that Wachovia/Wells Fargo breached their contracts when they incited and enabled serial, unauthorized invasions of her real accounts and her identity by developing and enforcing discredited and double-dealing profit motives and equipped employees with corrupted internal systems. FRCP 15, made applicable here by Bankruptcy Rule 7015, states that permission to amend a complaint should be freely granted "when justice requires." FRCP 15(a)(2). The United States Supreme Court has ruled that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*

9

*v. Davis*, 371 U.S. 178, 182 (1962).

**CONCLUSION**

Wells Fargo's second Motion To Dismiss should be denied in total and the case move forward on the merits. Alternatively, leave to amend should be granted for Margaret to add a breach of contract claim for relief

Respectfully submitted this 16th day of February, 2021.

                                  CARTLIDGE LAW OFFICE
                                  ____/s/Blaine E. Cartlidge_____
                                  Blaine E. Cartlidge, Esq.

                                  WHITE LAW CHARTERED
                                  ____/s/John White_____
                                  John White, Esq.
                                  Co-counsel for Plaintiff